1  **BRYAN CAVE LLP**
   Robert E. Boone III, California Bar No. 132780
2  120 Broadway, Suite 300
   Santa Monica, CA 90401-2386
3  Telephone:   310-576-2100
   Facsimile:   310-576-2200
4  Email:   reboone@bryancave.com

5  **BRYAN CAVE LLP**
   Stephanie A. Blazewicz, California Bar No. 240359
6  2 Embarcadero Center, Suite 1410
   San Francisco, CA 94111
7  Telephone:   (415) 675-3400
   Facsimile:   (415) 675-3434
8  Email:   stephanie.blazewicz@bryancave.com

9  Attorneys for Defendants
   COUNTRYWIDE HOME LOANS, INC.,
10 and COUNTRYWIDE BANK, N.A.

11

12            **UNITED STATES DISTRICT COURT**

13           **NORTHERN DISTRICT OF CALIFORNIA**

14

15 WES WRIGHT, individually and on behalf of       Case No. C08-02721
   the general public,
16                                                 **NOTICE TO ADVERSE PARTIES OF**
                    Plaintiff,                     **REMOVAL OF STATE ACTION**
17
              vs.
18                                                 (Napa County Superior Court Case No. 26-
   COUNTRYWIDE HOME LOANS, INC.,                   40623)
19 COUNTRYWIDE BANK, N.A., NAPA LAND
   TITLE COMPANY, and DOES 1-20
20
                    Defendants.
21

22

23

24

25

26

27

28

SF01DOCS\262.1

1

Bryan Cave LLP
Two Embarcadero Center, Suite 1410
201 Clay Street
San Francisco, CA 94111-3907

1    **TO PLAINTIFF AND HIS ATTORNEY OF RECORD:**

2        **PLEASE TAKE NOTICE THAT** Defendants Countrywide Home Loans, Inc., and

3    Countrywide Bank, N.A., filed a Notice of Removal of State Action ("Notice of Removal") in the

4    United States District Court for the Northern District of California on May 30, 2008.

5        A copy of the Notice of Removal is attached to this Notice as Exhibit "A."

6

7    Dated:  May 30, 2008                          **BRYAN CAVE LLP**
                                                     Robert E. Boone III
8                                                    Stephanie A. Blazewicz

9

10                                          By: _____
                                                     Stephanie A. Blazewicz
11                                                Attorneys for Defendants
                                                 COUNTRYWIDE HOME LOANS, INC., and
12                                               COUNTRYWIDE BANK, N.A.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
TWO EMBARCADERO CENTER, SUITE 1410
201 CLAY STREET
SAN FRANCISCO, CA 94111-3907

SF01DOCS\262.1

NOTICE TO ADVERSE PARTIES OF
REMOVAL OF STATE ACTION

# EXHIBIT A

1  **BRYAN CAVE LLP**
   Robert E. Boone III, California Bar No. 132780
2  120 Broadway, Suite 300
   Santa Monica, CA 90401-2386
3  Telephone:  310-576-2100
   Facsimile:  310-576-2200
4  Email:    reboone@bryancave.com

5  **BRYAN CAVE LLP**
   Stephanie A. Blazewicz, California Bar No. 240359
6  2 Embarcadero Center, Suite 1410
   San Francisco, CA 94111
7  Telephone:  (415) 675-3400
   Facsimile:  (415) 675-3434
8  Email:      stephanie.blazewicz@bryancave.com

9  Attorneys for Defendants
   COUNTRYWIDE HOME LOANS, INC.,
10 and COUNTRYWIDE BANK, N.A.

11

12                **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14

15 WES WRIGHT, individually and on behalf    Case No.
   of the general public,
16                                            **NOTICE OF REMOVAL OF ACTION**
            Plaintiff,                        **TO UNITED STATES DISTRICT**
17                                            **COURT UNDER 28 U.S.C. §§ 1331;**
            vs.                               **1441(B) (FEDERAL QUESTION)**
18
   COUNTRYWIDE HOME LOANS, INC.,
19 COUNTRYWIDE BANK, N.A., NAPA              (Napa County Superior Court Case No. 26-
   LAND TITLE COMPANY, and DOES 1-20         40623)
20
            Defendants.
21

22

23     **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

24     **PLEASE TAKE NOTICE THAT** Defendants Countrywide Home Loans, Inc.,

25 and Countrywide Bank, N.A. (collectively, "Countrywide"), remove this action from the

26 Superior Court for the State of California for the County of Napa to the United States

27 District Court for the Northern District of California based on federal question jurisdiction

28 pursuant to 28 U.S.C. §§ 1331 and 1441(b), and states in support as follows:

BRYAN CAVE LLP
TWO EMBARCADERO CENTER, SUITE 1410
201 CLAY STREET
SAN FRANCISCO, CA 94111-3907

SF01DOCS\264.2                    1

1.    On January 4, 2008, a civil action was filed in the Superior Court of the State of California, County of Napa, styled *Wes Wright, individually and on behalf of the general public* v. *Countrywide Home Loans, Inc., et al.*, Case No. 26-40623 (the "State Court Action").    Upon information and belief, Countrywide was not served with the original complaint in the State Court Action.

2.    On April 1, 2008, plaintiff Wes Wright ("Plaintiff") filed an Amended Complaint for Damages for Violation of Financial Code §§ 4970, *et seq.*; Rescission and Damages for Violation of the Federal Truth in Lending Act; Violation of B & P Code § 17200, *et seq.*; Fraud; Preliminary and Permanent Injunction; and Negligence ("Amended Complaint"). The Amended Complaint is attached as Exhibit 1.

3.    On April 30, 2008, Countrywide was served with a Summons and a copy of the Amended Complaint in the State Court Action.    A copy of the Summons and letter confirming the date of personal service are attached as Exhibit 2.

4.    Upon information and belief, on April 30, 2008, Defendant Napa Land Title Company was also served with a Summons and a copy of the Amended Complaint in the State Court Action.

5.    Upon information and belief, Defendant Napa Land Title Company has not yet appeared in the State Court Action.

### FEDERAL QUESTION JURISDICTION

6.    This Court has original jurisdiction over the State Court Action under 28 U.S.C. § 1331, and the State Court Action may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(b) in that Plaintiff alleges a violation of the Truth in Lending Act under 15 U.S.C. § 1601, *et seq.*

7.    This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1441(c).    See 28 U.S.C. § 1367; *see also City of Chicago v. International College of Surgeons*, 118 S. Ct. 523 (1997).

BRYAN CAVE LLP
TWO EMBARCADERO CENTER, SUITE 1410
201 CLAY STREET
SAN FRANCISCO, CA 94111-3907

NOTICE OF REMOVAL OF STATE ACTION

BRYAN CAVE LLP
TWO EMBARCADERO CENTER, SUITE 1410
201 CLAY STREET
SAN FRANCISCO, CA 94111-3907

## TIMELINESS OF REMOVAL

8.    Countrywide was served with the Amended Complaint on April 30, 2008. This Notice of Removal is being filed on May 30, 2008 and is timely under 28 U.S.C. § 1446(b).

## PROCEDURES FOR REMOVAL

9.    The Complaint and Summons attached hereto as Exhibits 1 and 2 constitute all process, pleadings, and orders served upon Countrywide in the State Court Action. 28 U.S.C. § 1446(a).

10.    Pursuant to 28 U.S.C. § 1446(d), Countrywide is filing a copy of this Notice of Removal with the Superior Court of the State of California for the County of Napa, and is serving a copy of same upon Plaintiff's counsel and counsel for defendant Napa Land Title Company.

## INTRADISTRICT ASSIGNMENT

11.    Pursuant to Local Rules 3-2(c) and (e), the San Francisco division of the Northern District of California has jurisdiction over this Action, because this Action arises in the county of Napa and is being removed from the Superior Court for the County of Napa.

Dated:  May 30, 2008

BRYAN CAVE LLP
Robert E. Boone III
Stephanie A. Blazewicz

By: _____
       Stephanie A. Blazewicz
Attorneys for Defendants
COUNTRYWIDE HOME LOANS, INC., and
COUNTRYWIDE BANK, N.A.

NOTICE OF REMOVAL OF STATE ACTION

**EXHIBIT 1**

1  JILL E. BARWICK, #113915
   BARWICK LAW FIRM
2  1303 Jefferson Street, Suite 200A
   Napa, California 94559
3  (707) 258-1799 telephone
   (707) 258-8877 facsimile
4
   Attorneys for Plaintiff
5  WES WRIGHT

6

7

**ENDORSED**

APR 0 1 2008

Clerk of the Napa Superior Court
S. FERINA
By: _____
         Deputy

CASE MANAGEMENT CONFERENCE
DATE: 6-12-08
TIME: 8:30am
PLACE: Courtroom A
825 Brown Street, Napa CA 94559

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF NAPA

DELAY REDUCTION CASE

11  WES WRIGHT, individually and on behalf  )   Case No.:   26-40623
    of the general public,                 )
12                                          )   AMENDED
         Plaintiff,                         )   COMPLAINT FOR DAMAGES FOR
13                                          )   VIOLATION OF FINANCIAL CODE §§ 4970,
         vs.                                )   et. seq.; RESCISSION AND DAMAGES FOR
14                                          )   VIOLATION OF THE FEDERAL TRUTH IN
    COUNTRYWIDE HOME LOANS, INC.,           )   LENDING ACT; VIOLATION OF B & P CODE
15  COUNTRYWIDE BANK, N.A., NAPA            )   § 17200, et. seq.; FRAUD; PRELIMINARY
    LAND TITLE COMPANY, AND DOES            )   AND PERMANENT INJUNCTION; AND
16  1-20,   inclusive,                      )   NEGLIGENCE
                                            )
17       Defendants.                        )   [JURY DEMANDED]
    _____/

18

19      Plaintiff, WES WRIGHT, hereby alleges:

20                          INTRODUCTION

21      1.    This action is brought by an unsophisticated homeowner who is facing the potential

22  foreclosure of his home pursuant to a loan with undisclosed, abusive and unlawful loan terms. This

23  predatory loan was generated by the defendants following false, inaccurate and incomplete

24  representations to Plaintiff and extended without the reasonable belief that Plaintiff would be able

25  to repay the obligation.

                              PARTIES

26      2.    Plaintiff WES WRIGHT (hereinafter referred to as "WRIGHT")  is, at all

27  times mentioned in this Complaint, a resident of Napa, Napa County, California.

28

3.    Plaintiff WRIGHT was the owner of the real property located at, and commonly known as, 2314 Main Street, Napa, California and unsophisticated in financial transactions.

4.    Defendant, COUNTRYWIDE HOME LOANS, INC. (hereinafter referred to as "Countrywide Loans") is, and at all times mentioned in this Complaint was, a company licensed to do business in the State of California and doing business in Sonoma and Napa, California and an agent for defendant COUNTRYWIDE BANK, N.A. This defendant is also hereinafter jointly referred to with Countrywide Loans as "Countrywide".

5.    Defendant, COUNTRYWIDE BANK, N.A. (hereinafter referred to as "Countrywide Bank") is, and at all times mentioned in this Complaint was, a company licensed to do business in the State of California and doing business in Sonoma and Napa, California and an agent for defendant COUNTRYWIDE BANK, N.A. This defendant is also hereinafter jointly referred to with Countrywide Loans as "Countrywide".

6.    Defendant, NAPA LAND TITLE COMPANY (hereinafter referred to as "Napa Land") is, and at all times mentioned in this Complaint was, a title company licensed to do business in the State of California and doing business in Napa, California.

7.    Unless otherwise alleged in this Complaint, Plaintiff is informed and believes, and on the basis of that information and belief alleges that at all times mentioned in this Complaint, defendants were the agents, employees, partner or joint venturer of each of the remaining defendants, and in doing the things alleged herein this Complaint, were acting within the course and scope of that agency and employment. Plaintiff is further informed and believes and thereon alleges that each of the defendants consented to, ratified and /or authorized the acts and actions herein alleged of each of the remaining defendants.

8.    Plaintiff does not know the true name of Defendants DOES 1 thru 20, inclusive, and therefore sues them by those fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges, that each of these fictitiously named defendants are responsible in some manner for the occurrences herein alleged, and that plaintiff's injuries and damages as herein alleged were proximately caused by the aforementioned defendants.

2

9.    Plaintiff is informed and believes, and thereupon alleges that each of said fictitiously named defendants, is responsible in some manner for the occurrences herein alleged, and that plaintiffs' injuries as herein alleged, were proximately caused by the acts and or omissions of each of them.

## GENERAL ALLEGATIONS

10.    In late December, 2005, Plaintiff spoke by telephone with Kevin O'Neill, Branch Manager and Senior Loan Consultant with Defendant Countrywide Loans. During the course of this telephone conversation, Mr. O'Neill represented that Plaintiff could refinance his residence and realize a monthly payment almost half of what Plaintiff was then paying.

11.    In reliance upon Mr. O'Neill's statements and encouragement, an appointment for Plaintiff was scheduled for Mr. O'Neill's office located in Sonoma, CA.

12.    Plaintiff made the appointment and brought the wage and income verification information requested by Mr. O'Neill. At this meeting, Plaintiff was informed that his existing loan and other debts could be consolidated into a single, new Countrywide loan, that would have a monthly principal and interest payment of approximately $ 1700 per month. Plaintiff was further informed that this principal and interest payment amount would increase approximately $ 100 annually.

13.    Shortly thereafter Plaintiff received a packet from Defendant Countrywide Loan with documents dated December 29, 2006. Upon receipt, Plaintiff contacted this Defendant to inquire about the packet and was told he didn't need to do read it or do anything with it, that it was just a formality in that they were required to send the packet to Plaintiff. Contained in this documentation was a good faith estimate for a single jumbo loan with an estimated monthly principal and interest payment of $ 1, 759.57.

14.    An agent of Defendant Countrywide Loan notified Plaintiff the week of January 5, 2007, that the loan documents were ready to be signed at the offices of Defendant Land Title.

15.    On or about January 5, 2007, Plaintiff entered into a contract for a loan with Defendants Countrywide Loans and Countrywide Bank at the Napa offices of Defendant, NAPA LAND TITLE COMPANY.

3

16.     During the course of signing the loan documents, Plaintiff objected to a document. Ms. Tinsley, the agent for Defendant Land Title took this document, disappeared down the hall and upon her return had altered and changed the information on the loan document. Based on this information and belief, Plaintiff believes Ms. Tinsley and her employer, Defendant Land Title were not only acting as title agents but also as agents of Defendant Countrywide Loans.

17.     The loan documents signed on January 5, 2007 were different than those dated December 29, 2006 and previously provided to Plaintiff. Among other differences, rather than one loan, there were now two loans, a first and a second, although the first still reflected an estimated principal and interest payment of approximately $ 1,700 per month.

18.     Prior to signing these loan documents, defendants Countrywide had not explained the terms of the loan(s) with Plaintiff, other than confirming that his principal and interest payment would be in the range of $ 1,700, and would increase annual by about $ 100.00. Defendant Napa Land Title, through Ms. Tinsley, during the execution of the loan documents confirmed that Plaintiff's principal and interest payment would be approximately $ 1,700.

19.     Prior to the execution of the loan documents, Plaintiff was not provided the required truth in lending information for the two separate loans to be extended to Plaintiff by Defendants Countrywide, when Countrywide changed from a single loan as reflected on the December 29, 2006 truth in lending documents to a set of loans - a first and second - in an amount and terms different from that in the initially proposed loan.

20.     Neither at the time Mr. Wright executed the Notice of Right to Cancel, nor when a copy of this document was provided to him on January 5, 2007 by Ms. Tinsley on behalf of the Defendants, was the date of the transaction and the date by which Mr. Wright could cancel the transaction filled in; Mr. Wright was provided with incomplete documentation .

21.     Following the execution of the loan documents, Plaintiff received a notice from Defendants Countrywide informing him that his principal and interest payment would be $ 1,741, and instructing Plaintiff where to send this payment should the payment coupons not be received in time for the March, 2006 loan payment.

4

22.    The loan coupons were received in February, 2007 and stated that the principal and interest payment would be $ 3,441.11. This was the first time Plaintiff had received information showing the loan payments would be greater than those he was making with his prior loan, as well as double what had been promised and represented to him by Defendants. This amount was increased further by the payment required on the second loan - a sum that had been included in the originally quoted loan and payment amount.

23.    Immediately upon receipt of the payment coupons, Plaintiff began calling Mr. O'Neill, but none of Plaintiffs messages or calls were returned by Mr. O'Neill or anyone else at Countrywide.

24.    In an effort to make his loan payments, Plaintiff sold off some of his personal property, as well as expending time earning additional money beyond his regular employment. Plaintiff valued his credit rating and his residence, and had been greatly stressed in trying to make the loan payments and not lose his house.

25.    Only when showing the loan documents in mid 2007 to a third party did Plaintiff discover that Defendants had greatly exaggerated his income far above the income documentation Plaintiff provided to them.

26.    Subsequently, despite making the loan payments timely and in person each month, Plaintiff received notification that his payment was late. In contacting Defendants by telephone, Plaintiff's call was sent to the foreclosure department, even though Plaintiff had not missed a payment nor was otherwise in foreclosure. It is Plaintiff's information and belief that Defendants Countrywide anticipated Plaintiff's default as of the time the loans were extended to Plaintiff.

27.    Plaintiff had only sought to refinance his existing loan to reduce the monthly payment. Plaintiff relied upon the representations of Defendants, and each of them, in agreeing to a new loan with Countrywide. If Plaintiff had been informed of the actual terms, conditions and monthly principal and interest payment, Plaintiff would not have accepted nor agreed to the Countrywide loan.

28.     The defendants originated this loan without the reasonable belief that plaintiff would be able to repay the scheduled payments and repay the obligation based upon a consideration of plaintiff's current and expected income, current obligations, employment status and other financial resources, other than the plaintiff's equity in the dwelling that secured the repayment of the loan

29.     Defendants intentionally chose to divide up the loan amount into two separate loans, with the first loan of an amount large enough such that Defendants to avoid various mandatory requirements geared to the protection of Plaintiff, with no explanation provided as to the basis for the sudden creation of two, rather than one, loan.

30.     Defendants chose to only consolidate a portion of Plaintiff's outstanding debts into this refinancing, thus ensuring Plaintiff's inability to meet all of his outstanding payment and debt obligations.

31.     Prior to the filing of this lawsuit, Plaintiff sent notification to Defendants Countrywide of his intent to rescind; Defendants refused to rescind this transaction.

## FIRST CAUSE OF ACTION
### (Violation of Financial Code Sections 4970, Et Seq.)

32.     Plaintiff incorporates the allegations contained in paragraphs 1 through 31, as though fully set forth herein.

33.     This cause of action is filed under provisions of the Financial Code Section 4970, et seq. for statutory and punitive damages as well as declaratory relief.

34.     The January 5, 2007 loan that is the subject of this action is a "covered loan" as defined in Financial Code Section 4970.

35.     This loan was a "consumer loan" as defined by Section 4970(d) because is was a consumer credit transaction that was secured by real property located in the State of California and used as the principal dwelling of plaintiff Wes Wright.

36.     Defendants, as the originator of this covered loan, willfully and knowingly violated Financial Code Sections 4973. Among other sections, Defendants violated Section 4973 because it originated this loan without the reasonable belief that plaintiff would be able to repay the scheduled

6

1  payments to repay the obligation based upon a consideration of plaintiff's current and expected income,

2  current obligations, employment status and other financial resources, other than the plaintiff's equity

3  in the dwelling that secured the repayment of the loan. Defendants further violated Section 4973

4  because it never gave the required written disclosures to the plaintiff.

5      37.     Injunctive relief is proper as plaintiff has no adequate remedy at law.  Monetary damages

6  will not compel defendants to cease its violations of Financial Code Section 4970, et seq. described

7  in this action.

8      WHEREFORE, plaintiff prays for judgment as set forth herein below.

9                    **SECOND CAUSE OF ACTION**
               (Violation of the Truth In Lending Act)

10     38.     Plaintiff incorporates the allegations contained in paragraphs 1 through 31,

11  as though fully set forth at this place.

12     39.     At all times hereto, defendants Countrywide in the ordinary course of its

13  business regularly extended or offered to extend consumer credit for which a finance charge

14  is or may be imposed or by written agreement which is payable on more than four

15  installments.

16     40.     On or about January 5, 2007 defendants Countrywide claim to have entered

17  into consumer credit transactions with plaintiff wherein defendant Countryside extended

18  consumer credit which was subject to a finance charge.

19     41.     Plaintiff is informed and believes and thereupon alleges that a promissory

20  note is in existence which purports to evidence this transaction.

21     42.     As part of this consumer credit transaction, defendant Countrywide retained

22  a security interest in the subject premises, which is the principal dwelling of plaintiff.

23     43.     This consumer credit transaction is subject to the additional consumer

24  protections provided for in 15 U.S.C. § 1639 and Regulation Z 12 C.F.R. § 226.32(a)

25  because the annual percentage at consummation of the transaction will exceed by more that

26  10 percentage points the yield on Treasury securities having comparable periods of maturity

27  on the 15th day of the month immediately preceding the month in which the application for

28

7

1 the extension of credit was received by the creditor.

2    44.    This consumer credit transaction was subject to the plaintiff's right to

3 rescission as described by 15 U.S.C. §1635 and Regulation Z § 226.23 (12 C.F.R. §226.23).

4    45.    In the course of this consumer credit transaction, defendant violated 15U.S.C.

5 §1635 (a) and Regulation Z 12 C.F.R. § 226.23 (b) by failing to deliver to plaintiff two

6 copies of completed notice of right to rescind and one copy of the initial Regulation Z

7 disclosure statement  for each of the loans extended.

8    46.    In the course of this consumer credit transaction, defendant violated 15

9 U.S.C. §1639 (a) and Regulation Z 12 C.F.R. § 226.32©) by failing to deliver to plaintiff a

10 copy of the disclosures for the two loans  three business days prior to consummation of the

11 transaction.

12    47.  In the course of this consumer credit transaction, defendant violated 15 U.S.C.

13 §1639(e) and Regulation Z 12 C.F.R. § 226.32(d)(1) where by the aggregate amount of the

14 regular periodic payments would not fully amortize the outstanding principal balance.

15    48.    The plaintiff has a continuing right to rescind the transaction until the third

16 business day after he receives both completed notices of right to rescind and disclosure

17 statements, pursuant to 15 U.S.C. § 1635(a) and Regulation Z 12 C.F.R. § 226.23(a)(3).

18    49.    Plaintiff intends service of this complaint as a Notice of Rescission and again

19 hereby rescinds the transaction.

20    WHEREFORE, plaintiff prays for judgment as set forth herein below.

21    **THIRD CAUSE OF ACTION**

22    **For Unfair Business Practices in Violation of Business
and Professions Code Section 17200 et seq.**

23    **(By Plaintiff  Against Defendants Countrywide;
and Does 1 through 20)**

24    50.  Plaintiff incorporates the allegations contained in paragraphs 1 through 49, as

25 though fully set forth herein.

26    51.  Plaintiff is suing both in his individual capacity and on behalf of the general

27 public.

28

8

52.     Plaintiff is informed and believes and thereupon alleges that beginning at an exact date which is unknown to Plaintiff, but from at least December 29, 2006, defendants committed unlawful, unfair and/or fraudulent business practices as defined by Business and Professions Code Section 17200,et. seq. by engaging in the unlawful, unfair and fraudulent business practices which set forth below.

a.     Defendant violated Financial Code Section 4973(f)(1) because it originated this loan without the reasonable belief that plaintiff would be able to repay the scheduled payments to repay the obligation based upon a consideration of plaintiff's current and expected income, current obligations, employment status and other financial resources, other than the plaintiff's equity in the dwelling that secured the repayment of the loan.

b.     Defendant violated Financial Code Section 4973(k)(1) because it never gave the written disclosure required by Section 4973(k)(1) to the plaintiffs.

c.     Defendant violated Financial Code Section 4979.6 because the made this covered loan that financed points and fees in excess of $1,000.00.

d.     Defendant violated 15 U.S.C. § 1635 (a) and Regulation Z 12 C.F.R. § 226.23 (b) by failing to deliver to plaintiff two completed copies of the notice of right to rescind and one copy of the initial Regulation Z disclosure statement for each loan.

e.     Defendant violated 15 U.S.C. § 1639 (a) and Regulation Z 12 C.F.R. § 226.32©) by failing to deliver to plaintiff a copy of the disclosure three business days prior to consummation of the transaction for both loans.

53.     The acts and practices described above were and are likely to mislead the general public and therefore constitute unfair or fraudulent business practices within the meaning of Business & Professions Code Section 17200.

54.     Defendants further violated Section 17500 et. seq. by their unlawful, unfair, deceptive, untrue and misleading business practices.

55.     Plaintiff has suffered injury in fact and has lost money and potentially property as a result of such unfair competition, and Defendants' failure to rescind said transaction following

9

1

2    Plaintiff's notification of same.

3        56.    Plaintiff is informed and believes that defendants' unlawful, unfair and fraudulent

4    business practices described above present a continuing threat to members of the public and that

5    defendants continue to engage in the unfair and unlawful acts described above.

6        57.    Plaintiff seeks injunctive relief enjoining defendants from engaging in the unfair

7    business practices described above.

8        58.    Injunctive relief is proper as plaintiff has no adequate remedy at law.  Monetary damage

9    will not compel defendants to cease to engage in the unfair business practices described in this action.

10   Plaintiff alleges that the benefit to the public good, as well as to the plaintiff, far outweighs the

11   inconvenience to the defendant of ceasing to engage in the unfair business practices.

12       WHEREFORE, plaintiff prays for judgment as set forth below.

13                          **FOURTH CAUSE OF ACTION**
                    **PRELIMINARY AND PERMANENT INJUNCTION**
14         **(By Plaintiff Against Defendants Countrywide and Does 1 through 20)**

15       59.  Plaintiff incorporates the allegations contained in paragraphs 1 through 49,

16   inclusive, as though fully set forth at this place.

17       60.  Defendant Countrywide, designated as the beneficiary under the Deeds of Trust executed

18   for these loans.

19       61.  Due to the wrongful actions and conduct of Defendants,  Plaintiff has been unable to

20   make his loan payments, as said payments are in excess of Plaintiff's available income and ability to

21   pay, as was known to Defendants at the time they extended said loans to Plaintiff.

22       62.  Plaintiff anticipates that Defendants' will institute a default and seek a non-judicial

23   foreclosure on Plaintiff's home.

24       63.  Any attempted foreclosure wrongful conduct of Defendants unless and until enjoined

25   and restrained by order of this Court will cause great irreparable injury to plaintiff in that plaintiff will

26   suffer loss of his home which will cause personal suffering, including potential homelessness, which

27   cannot be compensated for by monetary damages.

28                                            10

64. Plaintiff has no adequate remedy at law for the threatened conduct by defendants.

WHEREFORE, plaintiff prays for judgment as set forth below.

### FIFTH CAUSE OF ACTION
### INTENTIONAL FRAUD CC § 1710
**(By Plaintiff Against Defendants Countrywide and Does 1 through 20)**

65. Plaintiff incorporates the allegations contained in paragraphs 1 through 49, inclusive, as though fully set forth at this place.

66. Defendants made numerous and repeated representations to Plaintiff regarding the terms of Plaintiff's loan.

67. Defendants told Plaintiff that they could get him a new single loan which would replace his existing loan, and that the monthly principal and interest payments on the new loan would start at approximately $ 1700 per month. Defendants told Plaintiff that these loan payments would increase annually, such that the monthly payments would be about $ 100 more than the year prior.

68. Plaintiff, at the time Defendants made these representations, was ignorant of their falsity but believed them to be true and relied upon such representations in agreeing to accept and refinance his residential property.

69. Plaintiff in formed Defendants that the only reason he would enter into a new loan commitment and refinance his existing loan was if the loan payment on the new loan would be sufficiently lower than his existing loan. Defendant Countrywide' agents made numerous representations and assurances to Plaintiff that they could make a new loan for Plaintiff which would lower his principal and interest payment to about $ 1,700.00 per month.

70. Plaintiff provided Defendants with verification of his income and debts; Defendants represented that Plaintiff had sufficient income to qualify for a new loan, and that this new loan would also include that amount needed to pay off Plaintiff's outstanding credit card debt.

71. Defendants Countrywide never went through the proposed loan documentation with Plaintiff, nor did these Defendants ever provide Plaintiff with copies of their proposed loan documentation following Defendants decision to change the terms of the initial loan from a single loan

11

1

2   to  two separate loans. However, Defendants continued to assure Plaintiff that his new loan principal

3   and interest loan payments  would be approximately $ 1,700 per month for the first year, thereafter

4   increasing roughly $ 100 per month annually.

5           72.    Defendants prepared all of the loan documentation and directed Plaintiff to sign it

6   without first providing Plaintiff with a copy of the new proposed two loans and associated documents.

7           73.    Plaintiff did not have an opportunity to fully read and review all the pages so prepared

8   and instead was primarily shown those pages on which he was to execute his signature at the direction

9   of the Napa Land and Title agent.

10          74.    Well after January 5, 2007 was it discovered by Plaintiff that Defendants had created

11   loan documentation which contained inaccurate and false income figures and did not reflect the

12   information  provided by Plaintiff to Defendants Countrywide. At the time Defendants Countrywide

13   generated this documentation, it's agents knew them not to be true based on the information provided

14   to them by Plaintiff.

15          75.    Defendants knew at the time they made these representations regarding the terms of

16   the new loans to Plaintiff that they were false and made the representations with the intent to defraud

17   and deceive plaintiff and to induce Plaintiff to contract. However, Plaintiff, at the time Defendant made

18   these representations, was ignorant of their falsity and believed them to be true.  In fact, at the time

19   Defendant's agents made these representations to Plaintiff, they were aware that Plaintiff was relying

20   on their representations and that the new loan principal and interest payments would exceed Plaintiff's

21   current loan payment and increase more than $ 100 per month/annually and that Plaintiff would have

22   a difficult time making these higher principal and interest payments.

23          76.    Had Plaintiff known the actual facts and loan terms,  he would not have agreed to

24   enter into a new loan(s) with Defendants. Plaintiff, at the time these representations were made by

25   defendant, and at the time Plaintiff took actions herein alleged, was ignorant of the falsity of defendant's

26   representations and believed them to be true. In reliance on these representations, Plaintiff was

27   induced to and did enter into a contractual relationship with Defendants Countrywide. Had Plaintiff

28

1

2  known the actual facts, he would not have taken such action. Plaintiff's reliance on defendant's

3  statements  was justified.

4        77.     The true facts were that Defendants knew that Plaintiff could not qualify for a new

5  loan with his income; that Defendants could not provide Plaintiff a loan whose terms would  have

6  refinanced Plaintiff's existing loan with principal and interest payments lower than what Plaintiff was

7  paying, and in particular in the range of $ 1,700/month, with said monthly payment increasing

8  annually by roughly $ 100.

9        78.   By reason of the facts alleged herein, and as a proximate amount result of defendant's

10  fraud and deceit and the facts herein alleged,  Plaintiff was induced to refinance his real property.

11        79.   When Plaintiff learned the true principal and interest required under the subject loan(s),

12  Plaintiff attempted to contact Defendant Countrywide, without success.  Defendants thereafter failed

13  to accurately record Plaintiff's timely and personally made loan payments, and placed Plaintiff's loan

14  in their 'foreclosure department' when Plaintiff's loan payments were current and not in default, as if

15  in anticipation of their knowledge that Plaintiff would be unable to make the loan payments based on

16  Plaintiff's actual income.

17        80.   Plaintiff has heretofore demanded of Defendant Countrywide that these loans be

18  rescinded and that the terms of said loans were not as represented orally nor in the documentation

19  received from Defendants Countrywide,  but Defendants have failed and refused to do so, and still fails

20  and refused to either rescind the subject loans or otherwise remedy their fraudulent actions

21        81.   As a proximate result of defendants fraud and deceit and the facts herein

22  alleged  Plaintiff was induced to spend an inordinate number of hours of his time and energy in an

23  attempt to obtain funds to make the monthly principal and interest payment which was higher than

24  his prior loan payment, and has been suffering extreme emotional stress over the fear that his residence

25  will be lost as a result of being unable to make the payments which were not disclosed to him prior to

26  the execution of the loan documentation and which he can not afford, and which defendants were aware,

27  or should have been aware that Plaintiff would not be able to afford,  with an amount for such loss and

28                                13

damages in an amount according to proof.

82. The aforementioned conduct of defendants were an intentional misrepresentation, deceit, or concealment of material facts known to defendant with the intention of on the part of the defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiffs to a cruel and unjust hardship in a conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages, in an amount according to proof.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set forth below.

### SIXTH CAUSE OF ACTION
### NEGLIGENT FRAUD, DECEIT CC § 1710
### (By Plaintiff Against All Defendants)

83. Plaintiff incorporates the allegations contained in paragraphs 1 through 49, and paragraphs 66 through 80, inclusive, as though fully set forth at this place.

84. Defendants made these representations set forth herein with no reasonable basis for believing them to be true, as Defendants had access to all of Plaintiffs wage, income and debt records, value of subject property, existing loan amount and the ability to be knowledgeable of the true state of what type and terms of refinancing would be available to Plaintiff under his set of circumstances, as well as whether Plaintiff would have the ability to met the payment requirements of a new loan or loans, and if said new loans would meet Plaintiff's specific requirements regarding the monthly principal and interest payments. Defendants agents made these representations without regard for their accuracy.

85. These representations were made by defendant with the intent to induce plaintiff to act in the manner herein alleged.

86. Plaintiff, at the time Defendant made these representations set forth herein, and at the time Plaintiff took the actions herein alleged, was ignorant of the falsity of defendant's representations and believed them to be true. In reliance thereon, plaintiff was induced to, and did

14

1

2 contract with Defendants for the refinancing of his existing loan. Had Plaintiff known the actual

3 facts, he would not have agreed to enter in the new loan(s) extended to him by defendants.

4        87.    By reason of the facts alleged herein, and as a proximate amount result of

5 defendant's fraud and deceit and the facts herein alleged, Plaintiff was induced to refinance his real

6 property. Plaintiff has been forced to sell personal items and take other steps he would not have

7 otherwise taken but for Defendant's fraud and deceit, all to his damage according to proof at time of

8 trial.

9        88.    The aforementioned conduct of defendants, were negligent and reckless

10 misrepresentations, deceit or concealment of material facts known to defendants with the intention

11 on the part of the defendants to deprive plaintiff of property or legal rights or otherwise causing

12 injury, and such was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in

13 conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive

14 damages.

15        WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as set

16 forth herein below.

17

18                    **SEVENTH CAUSE OF ACTION**
                              **NEGLIGENCE**
19          **(By Plaintiff Against Napa Land & Title Company)**

20        89.    Plaintiff incorporates the allegations contained in paragraphs 1 through 49, and

21 paragraphs 66 through 80 inclusive, as though fully set forth at this place.

22        90.    Defendant Napa Land & Title is an escrow company who purported to act as an

23 impartial third party in the transaction between Plaintiff and Defendants Countrywide.

24        91.    Plaintiff relied on Defendant's services as an escrow holder in serving as an

25 impartial agent in the subject transaction, and to exercise diligence and impartiality in carrying out

26 their duties.

27

28                                    15

92.   Defendant, through its agent, instead acted as an agent of Defendants Countrywide, and made changes and alterations to the subject loan documentation and related documentation for and on behalf of Defendant Countrywide, to the detriment of Plaintiff.

92.   As a direct and proximate result of the negligence and carelessness of defendants as set forth above, Plaintiff sustained general and special damages in an amount according to proof at trial.

WHEREFORE, plaintiff prays for judgment against defendant, as follows:

**AS TO THE FIRST CAUSE OF ACTION:**

a.   Statutory damages in the amount of $15,000.00, as provided in §4978(a);

b.   For an injunction compelling reform of the loan contract to comply with the provisions of Section 4979.6;

c.   Punitive Damages, as provided in §4978(b)(2);

d.   For an Order compelling reform of this loan by declaring the interest rate and payment terms unenforceable and to comply with the provisions of §4973(b) as provided in §4978(b)(1);

**AS TO THE SECOND CAUSE OF ACTION:**

a.   Rescind the loan transactions;

b.   Order defendant to take all actions necessary to terminate any security interest in plaintiff's property created under the transaction and that the Court declare the security interest void;

c.   Order the return to plaintiff of any money given by plaintiff to anyone, including defendant, in connection with the transaction.

d.   Actual Damages as provided under 15 U.S.C. § 1640(a)(1);

e.   Statutory Damages as provided under 15 U.S.C. § 1640(a)(2);

f.   An amount equal to the sum of all finance charges and fees as provided under 15 U.S.C. § 1640(a)(4);

16

g.    Award plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §
1640(a)(3);

h.    Award such other and further relief as the Court deems just and proper.

## AS TO THE THIRD CAUSE OF ACTION

WHEREFORE, plaintiff prays for judgment as follows:

a.    That this Court enter a preliminary and permanent injunction restraining and enjoining defendants and their agents, servants, employees, representatives, and anyone acting on his behalf or at his direction from engaging in, committing, permitting, or performing, directly or indirectly, any of the unfair, unlawful, or deceptive business practices described above pursuant to Business & Professions Code;

b.    For restitution;

c.    For reasonable attorneys' fees pursuant to Code of Civil Procedure Section 1021.5;

d.    For costs of suit;

## AS TO THE FOURTH CAUSE OF ACTION:

a.    For a preliminary and permanent injunction restraining and enjoining defendants COUNTRYWIDE and their agents, servants, employees, representatives, and anyone acting on their behalf or at their direction from committing, permitting, or performing, directly or indirectly, any of the following acts regarding the premises:

(1) Proceeding to hold any foreclosure sale or taking any steps to hold a foreclosure sale;

(2) Taking any steps to foreclose upon the subject premises.

(3) Assigning, selling, deeding, and/or granting the Deeds of Trust and Promissory Notes;

b.    For costs of suit;

c.    For such other and further relief as this Court deems just and proper

d.    Actual Damages as provided under 15 U.S.C. § 1640(a)(1);

17

e.  Statutory Damages as provided under 15 U.S.C. § 1640(a)(2);

f.  An amount equal to the sum of all finance charges and fees as provided under 15 U.S.C. § 1640(a)(4);

g.  Award plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1640(a)(3);

**AS TO THE FIFTH CAUSE OF ACTION:**

1.  For compensatory and general damages, in an amount according to proof;

2.  For prejudgment interest on all amounts claimed at the prevailing legal rate:

3.  For Incidental and Consequential Damages, according to proof;

4.  For punitive damages in an amount appropriate to punish defendants, and each of them;

5.  For reasonable attorney's fees and costs of suit; and

6.  For any and further relief as the court considers proper

**AS TO THE SIXTH AND SEVENTH CAUSES OF ACTION:**

1.  For compensatory and general damages, in an amount according to proof;

2.  For prejudgment interest on all amounts claimed at the prevailing legal rate;

3.  For Incidental and Consequential Damages, according to proof;

4.  For reasonable attorney's fees and costs of suit; and

5.  For any and further relief as the court considers proper.

DATED: March 1, 2008                    BARWICK LAW FIRM

JILL E. BARWICK
Attorney for Plaintiff
WES WRIGHT

18

GUIDE TO NAPA SUPERIOR COURT
CIVIL CASE MANAGEMENT
AND ATTACHED ALTERNATIVE DISPUTE RESOLUTION PACKET

| | |
|---|---|
| FILING OF COMPLAINT | CASE MANAGEMENT CONFERENCE (formerly Trial Setting Conference) is set upon the filing of the Complaint, 160 days from filing of Complaint.  Notice is in form of stamp on face of complaint.  ADR Packet Distributed |
| PROOF OF SERVICE | DUE 60 DAYS FROM FILING OF COMPLAINT |
| PROOF OF SERVICE TO AMENDED COMPLAINT (if new party added) | DUE 30 DAYS FROM FILING OF AMENDED COMPLAINT |
| PROOF OF SERVICE TO CROSS-COMPLAINT (if new defendant added) | DUE 30 DAYS FROM FILING OF CROSS-COMPLAINT |
| PROOF OF SERVICE TO CROSS-COMPLAINT (if no new parties added) | DUE SAME DAY AS FILING OF CROSS-COMPLAINT |
| ANSWER/DEMURRER (responsive pleadings) | DUE NO LATER THAN 45 DAYS FROM FILING OF PROOF OF SERVICE   (30 days + 15  days if stipulated) |
| DEFAULT | DUE NO LATER THAN 55 DAYS FROM FILING OF PROOF OF SERVICE (30 + 15 + 10 DAYS) |
| DEFAULT JUDGMENT | DUE 45 DAYS FROM FILING OF DEFAULT |
| CASE MANAGEMENT CONFERENCE STATEMENT  Normally Settlement Conference, Trial Management Conference (formerly Trial Setting Conference), and Trial set @ Case Management Conference) | DUE 15 DAYS PRIOR TO Case Management Conference (Judicial Council form CM-110)  (Note: Trial Setting Conference Memorandum is no longer accepted for filing- see new State Rules) |
| | |
| UNINSURED MOTORIST CLAIMS | Application and order to be filed designating case a "UM" case, matter is removed from the court's control and an OSC re Delay Reduction Status is scheduled not sooner than 180 days of designation |
| STRUCTURED SETTLEMENT | Structured or Conditional Settlements.  Notice of Conditional Settlement must be submitted to the Court in the form of a Notice of Conditional Settlement and Order for Dismissal.  The Court shall dismiss the case, without prejudice, pursuant to the terms of the stipulated agreement.  Upon noticed motion and showing of good cause and default in the performance of the settlement, the Court will reserve jurisdiction to set aside the dismissal and order entry of judgment. |
| BANKRUPCTY OTHER REMOVALS, such as to Federal Court, Coordination Proceedings, First District Court of Appeal (either in instant or related case) | Notification is received, together with bankruptcy petition and stay, matter is removed from the court's control and an OSC re Delay Reduction Status is scheduled within 6 months |
| BINDING ARBITRATION | Normally stipulation and order is received or issue is resolved in open court, matter is removed from the court's control and an OSC re Delay Reduction Status is scheduled within 6 months |

PLEASE REFERENCE CALIFORNIA RULES OF COURT FOR CASE MANAGEMENT
AND NAPA SUPERIOR COURT LOCAL RULES
EFFECTIVE JULY 1, 2002



*You Don't Have to Sue*

Here Are Some Other Ways



to Resolve a Civil Dispute

Presented by the
Judicial Council of California
and the
State Bar of California

# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolution (ADR). The most common forms of ADR are mediation, arbitration, and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities, through dispute resolution programs and private neutrals.

# Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- ADR can be speedier. A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- ADR can save money. Court costs, attorneys fees, and expert fees can be saved.

- ADR can permit more participation. The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- **ADR can be flexible.** The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- **ADR can be cooperative.** This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- **ADR can reduce stress.** There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- **ADR can be more satisfying.** For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' positions harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be

3

effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# Three Common Types of ADR

This pamphlet describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

## • MEDIATION

In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved. The parties do.

Mediation is a cooperative process, in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other, where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Media-

4

tion also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how each other sees things.

Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or cannot have enough bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

### • ARBITRATION

In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. This is very different from mediation, where the mediator helps the parties reach their own resolution. Arbitration normally is more informal and much speedier and less expensive than a lawsuit. Because of the large number of cases awaiting trial in many courts, a dispute normally can be heard much more quickly by an arbitrator than by a judge. Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medical reports and bills and business records), rather than by testimony.

There are two kinds of arbitration in California. Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and, normally, is binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision. By contrast, a decision by an arbitrator in a case referred by the courts, known as "judicial arbitration," is not binding, unless the parties agree to be bound. A party who does not like the award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

5

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to resolve their dispute by themselves, or with the aid of a neutral.

- **CASE EVALUATION**

In case evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments, and makes an evaluation of the case. Each party gets a chance to present the case and hear the other side. This may lead to a settlement, or at least help the parties prepare to resolve the dispute later on.

Case evaluation, like mediation, can come early in the dispute and save time and money.

Case evaluation is most effective when someone has an unrealistic view of the dispute or when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Case evaluation may not be a good idea when it is too soon to tell what the case is worth or when the dispute is about something besides money, like a neighbor playing loud music late at night.

## Additional Information

There are several other types of ADR beside mediation, arbitration, and case evaluation. Some of these are conciliation, settlement conferences, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are

most likely to resolve your dispute.

The selection of a neutral is an important decision. There is no legal requirement that the neutral be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals. You may wish to inquire about the qualifications of any neutral you are considering.

Agreements reached through ADR normally are put in writing by the neutral and, if the parties wish, may become binding contracts that can be enforced by a judge.

You may wish to seek the advice of an attorney as to your legal rights and other matters relating to the dispute.

## Whom Do You Call?

To locate a dispute resolution program or neutral in your community:

• Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, 1-800-952-5210, or

• Contact the local bar association, or

• Look in the Yellow Pages under "Arbitrators" or "Mediators."

There may be a charge for services provided by private arbitrators and mediators.

NAME OF COURT: _____

## *ADR Information Form*

> *This form should be filled out and returned,*
> *within 10 days of the resolution of the dispute, to:*

1. Case name: _____ No. _____
2. Type of civil case: ☐ PI/PD-Auto     ☐ PI/PD-Other     ☐ Contract     ☐ Other *(specify):* _____
3. Date complaint filed _____ Date case resolved _____
4. Date of ADR conference _____ 5. Number of parties _____
6. Amount in controversy   ☐ $0–$25,000  ☐ $25,000–$50,000  ☐ $50,000–$100,000  ☐ over $100,000 *(specify):* _____
7. ☐ Plaintiff's Attorney     ☐ Cross Complainant's Attorney     8. ☐ Defendant's Attorney     ☐ Cross Defendant's Attorney

| | |
|---|---|
| NAME | NAME |
| ADDRESS | ADDRESS |
| ( ) | ( ) |
| TELEPHONE NUMBER | TELEPHONE NUMBER |

9. Please indicate your relationship to the case:

☐ Plaintiff   ☐ Plaintiff's attorney               ☐ Defendant   ☐ Defendant's attorney
☐ 3rd party defendant   ☐ 3rd party defendant's attorney     ☐ Other *(specify):* _____

10. Dispute resolution process:

☐ Mediation   ☐ Arbitration   ☐ Neutral case evaluation   ☐ Other *(specify):* _____

11. How was case resolved?
   a. ☐ As a direct result of the ADR process.
   b. ☐ As an indirect result of the ADR process.     c. ☐ Resolution was unrelated to ADR process.

12. Check the closest dollar amount that you estimate you saved (attorneys fees, expert witness fees, and other costs) by using this dispute resolution process compared to resolving this case through litigation, whether by settlement or trial.
   ☐ $0   ☐ $250   ☐ $500   ☐ $750   ☐ $1,000   ☐ more than $1,000 *(specify):* $ _____

13. If the dispute resolution process caused a net increase in your costs in this case, check the closest dollar amount of the *additional* cost:
   ☐ $0   ☐ $250   ☐ $500   ☐ $750   ☐ $1,000   ☐ more than $1,000 *(specify):* $ _____

14. Check the closest number of court days that you estimate the court saved (motions, hearings, conferences, trial, etc.) as a result of this case being referred to this dispute resolution process:
   ☐ 0   ☐ 1 day   ☐ more than 1 day *(specify):* _____

15. If the dispute resolution process caused a net increase in court time for this case, check the closest number of *additional* court days:
   ☐ 0   ☐ 1 day   ☐ more than 1 day *(specify):* _____

16. Would you be willing to consider using this dispute resolution process again?     ☐ Yes   ☐ No

Frontier Mgd Corp - Systems, Inc.

2730 Gateway Oaks Dr

Sacramento

C H L Inc

**EXHIBIT 2**

*AMENDED*

**SUMMONS**

**(CITACION JUDICIAL)**

SUM-100

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):** COUNTRYWIDE HOME LOANS, INC.,
COUNTRYWIDE BANK, N.A., NAPA LAND TITLE COMPANY,
AND DOES 1 - 20,

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** WES WRIGHT,
INDIVIDUALLY AND ON BEHALF OF THE GENERAL PUBLIC,

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**ENDORSED**

APR 0 1 2008

Clerk of the Napa Superior Court
By: S. FERINA
        Deputy

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is: (El nombre y dirección de la corte es): NAPA SUPERIOR COURT, 825 BROWN STREET, NAPA, CA 94559 | CASE NUMBER: (Número del Caso): 26-40623 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Jill E. Barwick, 113915, BARWICK LAW FIRM                    (707) 258-1799
1303 Jefferson Street, Ste. 200A, Napa, CA 94559                                    Stephen A. Bouch

DATE: **APR ␣ 1 2008**                    Clerk, by _S. FERINA_____, Deputy
(Fecha)                                            (Secretario)                                            (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

*SEAL*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☑ as the person sued under the fictitious name of (specify):
    *Countrywide Home Loans, Inc.*
3. ☒ on behalf of (specify):
    under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
             ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
             ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
             ☐ other (specify):
4. ☑ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

# BARWICK LAW FIRM

April 30, 2008

Countrywide Home Loans, Inc.
% The Prentice Hall Corporation System, Inc.
2730 Gateway Oaks Drive, Suite 100
Sacramento, CA  95823

      RE: Wes Wright  v.  Countrywide, et. al.
      NSC Case No. 26-40623

Dear Sir/Madam:

      On March 29, 2008, we mailed copies to you of the Amended Complaint, Summons and ADR packet in your capacity as the registered Agent for Service of Process for Countrywide Home Loans, Inc.  We requested the return of the original Notice and Acknowledgment of Receipt by April 14, 2008.

      The requested Notice and Acknowledgment was not returned nor has there been any communication from your office regarding this matter.

      Therefore, you have now been personally served with the Amended Complaint, Summons and ADR packet on behalf of Countrywide Home Loans, Inc.

                        Very truly yours,

                        Jill E. Barwick

Enclosures

JEB:eg